# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JEAN MARIE SCOTT, | ) | Case No. 1:16-41545-CAN7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DANIEL J. CASAMATTA, | ) | |
| ACTING UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 17-ap-4048-CAN |
| | ) | |
| v. | ) | |
| | ) | |
| LAW SOLUTIONS CHICAGO LLC | ) | |
| d/b/a UPRIGHT LAW LLC, and | ) | |
| DAVID L. COOPER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S EXPERT WITNESS**

Defendant Law Solutions Chicago LLC, doing business as UpRight Law LLC ("UpRight Law"), hereby responds to the United States Trustee's ("UST" or "Trustee") Motion in Limine to Exclude Defendant's Expert Witness[1], as follows:

### **Introduction**

This is the UST's second attempt to prevent UpRight Law's expert, Michael Downey, from testifying in this matter with respect to Counts V and VI, which are predicated on the

---

[1] Defendant timely disclosed this witness pursuant to Federal Rule of Civil Procedure 26(a)(2). Exhibit 1 - Rule 26 Disclosures.

Missouri Rules of Professional Conduct ("MRPC"). Like its first abortive attempt,[2] this Motion lacks a sound basis and should be denied. Mr. Downey is extraordinarily well-qualified to serve as an expert on issues associated with the MRPC, and his testimony will assist the Court in evaluating Counts V and VI, which have transformed into Counts of a disciplinary nature.[3] Contrary to the suggestion that expert testimony is not admissible in disciplinary proceedings, there is a wealth of authority that provides that expert testimony is, in fact, admissible in this context. Moreover, commentary written on the subject has concluded that there are compelling reasons to allow expert testimony of this nature, and no compelling reasons to categorically exclude it. Given the fact that this is a bench trial where there is no danger of jury confusion, that the Court is more than capable of assessing the appropriate validity and weight to expert testimony, and that the testimony will assist the Court in evaluating Counts V and VI, the UST's Motion should be denied.

## Procedural History and Mr. Downey's Opinions

This is a case in which the Defendants successfully represented the Debtor, Jean Marie Scott ("Debtor" or "Ms. Scott"), in her Chapter 7 Bankruptcy case. On September 26, 2016, Ms. Scott's Chapter 7 case was discharged. Ms. Scott paid a total of $1,585 for her bankruptcy, which consisted of a $1,250 attorney fee and a $335 filing fee. Ms. Scott's petition did not contain any errors; there is no assertion that Ms. Scott was an inappropriate candidate for a

---

[2] The UST filed a Motion for Sanctions against UpRight Law in which it claimed that UpRight Law had engaged in spoliation of evidence. (Doc. 88) As a sanction, the UST asked the Court to preclude Mr. Downey from testifying, and to pay the fees of its rebuttal expert, Professor Lois Lupica. (Doc. 88 at 22-23). After forcing UpRight Law to incur the cost of multiple depositions, and preparing a response to the Motion, the UST withdrew its Spoliation Motion. (Doc. 148).

[3] Defendant moved for summary judgment on Counts V and VI and will not repeat those arguments here, but reserves its objections. Based on the Court's ruling on the Motion for Reconsideration, it appears that the Court has construed these Counts to be disciplinary in nature, based on its indication that it would not fashion any judgment against the Defendants in favor of the UST, but could potentially impose sanctions. (Doc. 63 at 18-19).

2

Chapter 7 bankruptcy; there is no suggestion that she did not wish to file for bankruptcy; there is no claim that she would have been better served by not filing bankruptcy; and there is no contention that she would have been better served by filing bankruptcy under a different Chapter.

Nevertheless, the UST has brought the instant adversary complaint against Defendants, which includes claims in Counts V and VI against UpRight Law. These Counts are predicated on various alleged violations of the MRPC.[4] In Count V, the UST alleges that UpRight Law violated MRPC 4-1.15 by depositing advance flat fees from the Debtor into an operating account. In Count VI, although Ms. Scott was represented by UpRight Law partner David Cooper, a Missouri-licensed attorney who filed her bankruptcy petition, the UST contends that UpRight Law violated MRPC 4-5.3 and 5.5 based on the allegations that it engaged in the unauthorized practice of law in Ms. Scott's case because there was "no active participation and joint liability" of a Missouri-licensed attorney for a 10-month period. (Doc 19 at ¶ 161). The UST also contends that UpRight Law "either knowingly aided and abetted the unauthorized practice of law or negligently failed to supervise [non-attorney] Mr. Fox." (*Id*. at ¶ 162).

Believing that the Court would be assisted by expert testimony from a Missouri-licensed expert in law practice management and legal ethics, UpRight Law engaged Michael Downey to serve as its expert in this case on the allegations relating to Counts V and VI. Mr. Downey prepared, and UpRight Law timely submitted to the UST, Mr. Downey's expert report. Exhibit 2 -Downey Expert Report ("Ex. 2").

As part of his report, Mr. Downey undertook extensive review of UpRight Law's procedures as they developed from 2014 through 2017.[5] Mr. Downey reviewed the transcript of

---

[4] The UST did not bring these claims against David Cooper, the Missouri-licensed UpRight Law partner who represented Ms. Scott in his capacity as a partner of UpRight Law.
[5] The UST attacks the reliability of Mr. Downey's opinions based upon confusion over the training materials in place in December 2014. This is a red herring. Mr. Downey testified that he was aware of procedures in place in

3

Ms. Scott's deposition and telephone conferences between Ms. Scott and Brandon Fox. Ex. 2 at 26-27. He reviewed UpRight Law Managing Partner Kevin Chern's deposition that the UST took during discovery on the UST's Motion for Sanctions. *Id.* at 27. He also examined UpRight Law compliance materials including Upright Law compliance exams, Onboarding Procedures Manual, UpRight Law Verbal Retainers, Intake Procedures Manual and Compliance Training materials. *Id.* at 25. Mr. Downey reviewed dockets, pleadings, orders and internal documents related to UpRight Law in *In re Jean Marie Scott*, Case No. 16-41545-CAN7 (W.D. Mo. Bankruptcy) and *United States Trustee v. Law Solutions Chicago, LLC*, Case No. 17-4048-CAN (W.D. Mo. Bankruptcy). *Id.* at 26-27.

> Based upon his review, Mr. Downey opined that:
>
> In sum, it is my professional opinion to a reasonable degree of certainty that UpRight Law did not violate Missouri law on the practice or unauthorized practice of law, either in its dealings with Ms. Scott or in how the firm did (in 2014) or does now operate. Ex. 2 at 21.

Mr. Downey based this opinion on his analysis of the structure of the firm and its personnel:

> First, UpRight Law is – and thus Mr. Fox worked for – a law firm, a limited liability company owned and managed by lawyers. Second, that law firm includes among its personnel in its Chicago office a lawyer licensed in Missouri and admitted to practice in the Western District of Missouri. Third, the client was represented in her bankruptcy by firm attorney David Cooper, a Missouri-licensed attorney who was actively involved in the matter – a fact demonstrated, as discussed above, by the fact Mr. Cooper recorded more than one-half of the approximately thirty hours that UpRight Law worked on Ms. Scott's case." Ex. 2 at 21.

Moreover, Mr. Downey opined that:

> Based upon my considerable experience relating to law firm management and operations, frankly I believe the lawyers who manage UpRight Law should be commended for the lengths they have gone to provide adequate training, supervision and monitoring to its nonlawyer staff, and in otherwise satisfying the mandates of Rule 4-5.3(a). As discussed above, UpRight Law provides training and scripts that designate certain disclosures as

---

December 2014 from the "other information in the record, including Mr. Fox's testimony, Mr. Chern's testimony and documents." Ex. 3 at 182:18-183:3. Mr. Downey undertook a detailed analysis of the representation of Ms. Scott in the report. Ex. 2 at 10-15.

4

mandatory. UpRight Law also provides technological aids to assist its senior client consultants with client onboarding, and it tests those senior client consultants and grades their performance on those tests. This training and direction includes that in SRCC Intake Procedures, scripts, ZingTree, and disclaimers, the nonlawyer senior client consultant is directed to tell prospective clients clearly and repeatedly that the senior client consultant is not an attorney. The senior client consultant gathers client-related information and also provides certain information – such as a basic description of a Chapter 7 and Chapter 13 Bankruptcy, but the senior client consultant is directed not to guide a prospective client regarding what type of bankruptcy proceeding the client may need. Such measures far exceed what more traditionally organized law firms generally provide for staff involved in client intake.[6] Ex. 2 at 19.

Mr. Downey further opined:

> I commend UpRight Law for its serious, on-going efforts to try to provide effective, cost-efficient representation to consumers who need to file for bankruptcy – by self-definition a group that have very limited financial means, and often have not received significant opportunities for exemplary representation from the bar as it has traditionally operated. Ex. 2 at 21-22.

With respect to the trust accounting issues, Mr. Downey's report explains;

> As Formal Opinion 128 admits, it was announcing a rule on the handling of flat fees contrary to prior common understanding. My own experience as a Missouri legal ethics lawyer and frequent presenter at Missouri legal ethics continuing legal education programs proves that, although seven years have passed since the adoption of Formal Opinion 128, many Missouri lawyers do not know about (or at minimum do not agree or comply with) Formal Opinion 128's guidance on the handling of flat fees. Knowing that lawyers often mishandle fixed fees, I regularly make a point of raising this issue frequently when speaking on legal ethics issues. My discussion of Formal Opinion 128 and its dictates on the handling of fixed fees are often met with disbelief and resistance. Ex. 2 at 23. . . . "UpRight Law's handling of Ms. Scott's payments – placing advance payments on fees into the firm operating account – did not conform with Missouri law, but constitutes a common mistake that, when fixed as here at the firm's initiative, would not and should not result in a serious sanction. Ex. 2 at 22.

The UST engaged Professor Lois Lupica as its rebuttal expert. Both experts were deposed

in early 2018. Professor Lupica devoted significant amounts of time to this matter, and

---

[6] Mr. Downey supported this opinion with his analysis of the intake process in place in December of 2014 which Kevin Chern explained in sworn deposition testimony. Ex. 2 at 4. This supports the reliability of Mr. Downey's testimony and establishes that his opinion was based upon "sufficient facts and data" as required by Federal Rules of Evidence ("FRE") 702(c). The notion that Mr. Downey was unfamiliar with UpRight Law's intake practices in December of 2014 is not supported by the record.

5

according to her testimony at the time of her deposition, had incurred close to $100,000 in fees at that time.

## Standard of Review

FRE 702 "reflects an attempt to liberalize the rules governing the admission of expert testimony." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)(citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993)). The rule is "clearly one of admissibility rather than exclusion." Id. (internal citation and quotations omitted).  The Court has "broad discretion" in deciding the admissibility of expert testimony. *Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). Under FRE 702, expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *U.S. v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (holding doubts over expert testimony should be resolved in favor of admissibility).

Moreover, "*Daubert* is meant to "protect *juries* from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig. (In re Zurn)*, 644 F.3d 604, 613 (8th Cir. 2011) (emphasis added). When the court is the finder of fact, "'[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'" *Id.* (alteration in original) (quoting *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005)). *Daubert*'s application is relaxed for bench trials." *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012).

## Argument

**I.  Mr. Downey Is Extraordinarily Well Qualified To Serve as an Expert On Matters Related to UpRight Law's Alleged Violations of the MRPC.**

Mr. Downey has been offered as an expert on two Counts (Counts V and VI) that are predicated on the MRPC.  It is beyond reasonable dispute that he is highly qualified to do so.

6

Mr. Downey is an expert in law practice management, legal ethics, attorney professional responsibility and the law of lawyering. He graduated first in his class at Washington University School of Law where he was the Executive Articles Editor for the Washington University Law Quarterly.[7] Exhibit 4 – Downey Curriculum Vitae ("Ex. 4") at 1. He clerked for Judge Pasco M. Bowman of the U.S. Court of Appeals for the Eighth Circuit. *Id.* Mr. Downey has a Graduate Certificate in Law Firm Management from George Washington University. *Id.* He has served as an Adjunct Professor at both Washington University School of Law and St. Louis University School of Law in Ethics & Practice Management among other classes. *Id*. He was a partner at Fox Galvin, Hinshaw & Culbertson and Armstrong Teasdale. *Id.* at 2. He now heads his own firm devoted to legal ethics, law firm risk management, lawyer discipline defense and the law of lawyering. *Id.* He has written the book, *Introduction to Law Firm Practice* published by the American Bar Association Law Practice Management Section, in addition to numerous other book chapters and more than 150 articles focusing on law practice management and ethics. *Id.* at 2-11.

Mr. Downey has extensive experience with legal ethics in Missouri. He has been licensed to practice law in Missouri since 1998. He started focusing his practice on the law of lawyering and legal ethics around 2002. Ex. 3 at 19:3-11. He was the Chair of the Law Practice Division of the American Bar Association. Ex. 4 at 47. He is member of the Missouri Bar Association Board of Governors. *Id.* at 48. He served on the Missouri Bar "Ethics 2005" Committee and the Special Committee on Lawyer Advertising. *Id.* He served as a Disciplinary Hearing Officer for the Missouri Supreme Court. *Id.* He is also a member of the American Bar Association Standing

---

[7] Washington University School of Law is ranked as #18 in U.S. News Best Law Schools. https://www.usnews.com/best-graduate-schools/top-law-schools/washington-university-in-st-louis-03092. Mr. Downey audited Bankruptcy Law taught by U.S. Bankruptcy Judge Barry S. Schermer while in law school. Exhibit 3 – Downey Deposition Transcript ("Ex. 3") at 21:3-15.

7

Committee on Professional Regulation. *Id.* In December 2013, Missouri Lawyers Weekly named him a 2014 Most Influential Lawyer for his work as leader of the ABA Law Practice Division and as the "go-to legal ethics counsel in Missouri." Ex. 2 at 28. He has been long-established as a leader in attorney ethics. In short, it is difficult to imagine an expert who is more qualified to opine on matters related to the MRPC.

The UST appears to concede that Mr. Downey is a qualified expert on "general issues of legal ethics and professional responsibility." (Motion at 2). Yet, the UST attempts to argue that he somehow is not qualified to serve as an expert on two Counts predicated on the MRPC, because he purportedly lacks sufficient expertise in consumer bankruptcy. The UST is mistaken in two respects.

First, contrary to the suggestion that Mr. Downey lacks sufficient bankruptcy experience, Mr. Downey actually possesses substantial bankruptcy experience. Mr. Downey serves as outside general counsel to a consumer bankruptcy firm. Ex. 3 at 15:18-16:17. Mr. Downey has defended lawyers practicing consumer bankruptcy in disciplinary proceedings. *Id.* at 16:18-17:7 Mr. Downey has made presentations on Ethics in Bankruptcy Practice for the United States Bankruptcy Court for the Eastern District of Missouri, the Missouri Bar Annual Bankruptcy Institute and the National Business Institute. Ex. 4 at 27, 29, 31 and 36. Mr. Downey has even defended a deposition against UST Counsel Adam Miller in a bankruptcy case. Ex. 3 at 17:19-21. Mr. Downey has practiced in bankruptcy cases himself including a consumer bankruptcy case.[8] *Id.* at 19:12-20:12, 22:8-23:10. Mr. Downey does not concentrate his practice in bankruptcy, but he has significant experience with ethics in bankruptcy practice.

---

[8] Notably, Lois Lupica, the rebuttal expert designated by the UST has never represented a debtor in a chapter 7 or chapter 13. Exhibit 5 – Lupica Deposition Transcript. ("Ex. 5") at 31:10-21. In fact, Professor Lupica testified that mere study of consumer bankruptcy law is a sufficient basis to develop consumer bankruptcy expertise. Ex. 5 at 20:7-16.

Second, the UST fails to show why particular bankruptcy expertise is necessary for an expert to be able opine on Counts V and VI, which are predicated on trans-substantive Rules of Professional Conduct. With respect to Count V, which relates to MRPC 4-1.15, the underlying substantive practice area is irrelevant. Mr. Downey's opinion is that placing advance payments of fees into a firm operating account constitutes a common mistake among Missouri practitioners that, when fixed at the firm's initiative (which occurred in this case), should not result in a serious sanction.[9] Ex. 2 at p. 22. The accounting practices at issue in MRPC 4-1.15 are not dependent on this being a bankruptcy matter at all, and the UST makes no effort to argue otherwise. Accordingly, the notion that an expert would need highly specialized bankruptcy knowledge to opine on the issues in Count V is simply not true.

With respect to UpRight Law's purported violations of MRPC 4-5-3 and 4-5.5, the Amended Adversary Complaint alleges that UpRight Law engaged in the unauthorized practice of law "during the period of December 29, 2014 through at least October 21, 201[5] but without the active participation and joint liability of a lawyer licensed to practice law in Missouri." (Doc 19 at ¶ 161). The UST also alleges that UpRight Law "either knowingly aided and abetted the unauthorized practice of law or negligently failed to supervise Mr. Fox, when Mr. Fox as a non-lawyer UpRight Law employee, rendered specific legal advice concerning the filing of bankruptcy under the circumstances…" (Id. at ¶ 162). The UST's Motion makes little effort to explain why specialized expertise would be required to opine on whether UpRight Law engaged in the unauthorized practice of law, or negligently supervised a member of its support staff, and

---

[9] As noted *infra* at p. 16, MRPC 4-1.15 has been modified by the Missouri Supreme Court, effective January 1, 2019, to allow fees up to $2,000 to be deposited into an operating account. Under these circumstances, a significant sanction is even less appropriate than it was when Mr. Downey prepared his report in December 2017.

the reasoning that it provides is entirely unpersuasive.[10] The reality is that issues of supervision and unauthorized practice transcend particular practice areas.[11] Issues surrounding supervision of support staff occur in many areas of consumer law practice, such as employment law and mass tort practice, and the ability to opine on whether reasonable supervisory measures were in place simply does not require highly specialized knowledge of the consumer bankruptcy system.

The cases cited by Defendant do not support exclusion of Mr. Downey's testimony. These cases deal with the need for particularized expertise (including scientific expertise) that were relevant to whether those experts were qualified and are significantly distinguishable from this case. For example, the UST cites to *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001), which held it was error to permit a hydrologist to offer expert opinion on warehousing practices. But hydrology and warehousing practices are distinct disciplines. In sharp contrast, consumer bankruptcy is one category of law practice. Moreover, in *Pittsburgh Steel* the hydrologist: (1) did not study warehousing practices during his formal education; (2) had never written about warehousing; and (3) had never been employed by a warehouseman. *Id.* In the instant case, Mr. Downey: (1) has studied bankruptcy law in law school; (2) presented about ethics in bankruptcy law numerous times; (3) practiced bankruptcy law; and (4) is currently employed as outside general counsel for a consumer bankruptcy law

---

[10] Mr. Downey based his report on the UpRight Law policy and procedure, in effect in December of 2014, and testified to by Managing Partner Kevin Chern, that senior client consultants presented a general description of the difference between Chapter 7 and Chapter 13 and described non-bankruptcy alternatives to prospective clients. Ex. 2 at 4-5. Mr. Downey also considered evidence that UpRight Law Partner Attorneys review chapter selection with clients during a compliance call procedure. *Id.* at 8-9 and 22. This evidence supported Downey's opinion that UpRight Law takes "reasonable efforts" to comply with the MRPC.

[11] The UST takes issues with the extent of Mr. Downey's knowledge of Sections 526 and 528 of the Bankruptcy Code. But Mr. Downey was not designated as an expert on the Counts of the Amended Adversary Complaint that are based on those sections. The UST's efforts to conflate claims based on the MRPC with those that are based on sections of the Bankruptcy Code are unavailing.

firm. Mr. Downey is not analogous to the hydrologist with no warehousing experience at all. He is an expert in legal ethics with training and experience related to consumer bankruptcy.[12]

The UST also cites to *Weisgram v. Marley Co*., 169 F.3d 514, 517 (8th Cir. 1999) and *Am. Auto. Ins. Co. v. Omega Flex, Inc*., 783 F.3d 720, 724 (8th Cir. 2015). These cases deal with the admissibility of scientific and technical testimony in product liability cases. In *Weisgram*, the Court held that experts with no experience with baseboard heaters should not be allowed to testify about a fire allegedly caused by a heater. 169 F. 3d at 517-522. In *Am. Auto. Ins.,* the Court held that exclusion of expert testimony about the design and installation of metal tubing from an expert who claimed no expertise in the design of the metal tubing was not error. 783 F. 3d at 724. Even *assuming arguendo* that products liability testimony is an appropriate comparison, Mr. Downey is an admissible witness. The relevant claims center around alleged violations of the MRPC by a consumer bankruptcy firm. As outside general counsel to a consumer bankruptcy firm, Mr. Downey has experience working on the relevant product -- or in this case service -- which is consumer bankruptcy law. (It bears emphasizing, again, that the UST selected a rebuttal expert who has never filed a Chapter 7 or Chapter 13 bankruptcy petition, or advised a debtor; the UST clearly did not believe that form of experience is necessary for someone to serve as its expert). The extent of Mr. Downey's experience with consumer bankruptcy law at most goes to the weight of his testimony, not its admissibility. As the Eighth Circuit has explained:

> Rule 702 only requires that an expert possess "knowledge, skill, experience, training, or education" sufficient to "assist" the trier of fact, which is "satisfied where expert testimony advances the trier of fact's understanding to any degree." 29 Charles Alan Wright & Victor James Gold, Federal Practice And Procedure: Evidence § 6265 (1997).

---

[12] The Eighth Circuit itself distinguished *Wheeling* in *Sosna v. Binnington*, 321 F.3d 742, 746 (8th Cir. 2003). In that case, the Eighth Circuit stated that an internist who was not a surgeon could testify about the standard of care regarding whether a surgeon committed malpractice. *Id*. Mr. Downey need not concentrate his personal law practice in consumer bankruptcy to testify as an expert in this case on the issue relating to discipline under the MRPC.

"Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.*

*Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)

In short, Mr. Downey is extraordinarily well qualified to opine on matters relevant to Counts V and VI. The UST's Motion to disqualify him must be denied.

**II. Numerous Tribunals Have Admitted Expert Testimony That Relates To Purported Violations of the Professional Conduct, and There Are Compelling Policy Reasons To Allow It.**

Contrary to the UST's suggestion that expert testimony that relates to violations of the MRPC is improper, numerous courts have admitted expert testimony that relates to alleged violations of the Rules of Professional Responsibility.[13] *Matter of Harney,* No. 90-O-14277, 1995 WL 170223, at *15, FN 7 (Cal. Bar Ct. Apr. 4, 1995) (holding that expert may testify on ultimate issue involving professional responsibility); *In re Davis*, No. 96-O-04662, 2003 WL 21904732, at *10 (Cal. Bar Ct. Aug. 6, 2003) (attorney qualified to opine on the ultimate issues within his expertise in disciplinary action but giving little weight to bankruptcy practitioner who was not expert on State Bar disciplinary matters)[14]; *In re Bodell*, No. 99-R-12244, 2002 WL 31654998, at *4, FN 4 (Cal. Bar Ct. Nov. 22, 2002) (holding that opinion testimony on ultimate issue is admissible in reinstatement disciplinary action); *State ex rel. Nebraska State Bar Ass'n v. Miller*, 258 Neb. 181, 196, 602 N.W.2d 486, 498 (1999) (holding that opinion testimony on reasonableness of fee is admissible in disciplinary action)**;** *Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 617 (Tex. App. 2004) (holding that attorney with expertise on

---

[13] Even in two of the cases cited by the UST, expert ethics testimony was actually permitted contrary to the UST assertion. One case held, "[t]estimony by an expert regarding the ultimate issue is allowed, but the trial court has discretion to reject the expert testimony in whole or in part." *In re Burtch*, 175 P.3d 1070, 1077 (Wash. 2008). The Wyoming Supreme Court permitted expert testimony on many issues from ethics experts relating to professional conduct but did not permit opinions on ultimate issues. *Wyoming State Bar v. Stinson*, 337 P.3d 401, 417-420 (Wy. 2014).

[14] This case suggests that Mr. Downey is the perfect type of expert in this case because he is a lawyer who is an expert on disciplinary matters but is also familiar with ethics in bankruptcy practice.

advertising rules of professional conduct was admissible); *See generally* Timothy P. Chinaris, *Even Judges Don't Know Everything: A Call for A Presumption of Admissibility for Expert Witness Testimony in Lawyer Disciplinary Proceedings*, 36 St. Mary's L.J. 825, 833 (2005)(analyzing cases that have admitted expert ethics testimony).

Conspicuously absent from the UST's Motion is any citation to controlling authority that would prohibit this Court from considering expert testimony in the context of a disciplinary proceeding. Indeed, this is no such controlling authority. To the contrary, the UST for Region 13 has itself submitted expert testimony relating to alleged violations of the MRPC in prior bankruptcy matters. *In re Brown*, No. 09-44254, 2011 WL 477822, at *5 FN 10 (Bankr. W.D. Mo. Feb. 7, 2011) (expert testimony admitted on unauthorized practice of law issues). On prior occasions, the UST had no difficulty submitting expert testimony of its own on similar issues to the ones present here.

Courts and commentary have noted that there are sound policy reasons to allow expert testimony in this context. For example, the Nevada Supreme Court has held in the context of a judicial disciplinary action that since their equivalent to FRE 704 expressly permits expert testimony concerning the ultimate issue to be decided:

> [W]e perceive no reason why judicial ethics expert testimony should be singled out for exclusion on this basis…. We agree that expert testimony may prove helpful in many cases, and the Commission would therefore be wise to carefully evaluate whether to admit proposed expert testimony in future hearings, based on the substance of the proposed testimony and the facts of the case.

*In re Assad*, 124 Nev. 391, 402-403 (Nev. 2008). Commentary has likewise expressed the view that expert testimony in this context should be presumptively admissible. As one article stated it:

> The nature of ethics rules shows that the rules present a fertile ground for testimony by experts on legal ethics and law practice. In fact, many of the rules of professional conduct by their own terms require reference to standards of conduct or concepts outside of the

> rules themselves in order for the rules to be adequately understood or applied--or for a disciplinary authority to properly conclude that they were violated.

Timothy P. Chinaris, *Even Judges Don't Know Everything: A Call for A Presumption of Admissibility for Expert Witness Testimony in Lawyer Disciplinary Proceedings*, 36 St. Mary's L.J. 825, 860 (2005). That is the precisely the case for MRPC 4-5.3, which requires an analysis of whether the measures implemented by law firms to ensure ethical compliance by non-lawyers are reasonable. *Id*. at 860, 861. Determinations of reasonableness lend themselves to comparisons with other law firms, and industry standards. Expert testimony can assist in providing this context. Indeed, Mr. Downey's testimony relating to Rule 4-5.3 is based on Mr. Downey's considerable experience relating to law practice management and operations.

Thus, although the general rule in the Eighth Circuit is, "expert testimony on legal matters is not admissible," *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc*., 320 F.3d 838, 841 (8th Cir. 2003) citing *United States v. Klaphake*, 64 F.3d 435, 438–39 (8th Cir.1995), the Eighth Circuit recognizes that "industry practice or standards may often be relevant…, and expert or fact testimony on what these are is often admissible." *Id.* citing *Wood v. Minnesota Mining & Mfg*., 112 F.3d 306, 310 (8th Cir.1997). Given the MRPC's heavy dependence on determinations of reasonableness, and standards within the legal industry, expert testimony is clearly appropriate.[15]

---

[15] For example, as Michael Downey opines, "Contrary to the Trustee's allegations, there is no prohibition on non-lawyer support staff communicating legal advice, so long as they are adequately supervised by attorneys within the firm. As explained in The Restatement (Third) of The Law Governing Lawyers, '[a] lawyer's nonlawyer employees and agents must be properly supervised by the lawyer with respect to such activities as interviewing clients to assure that any advice given is appropriate. If done under appropriate supervision to assure that any inappropriate advice is detected and corrected, such nonlawyer dealings with clients are permissible. Restatement (Third) of The Law Governing Lawyers § 11, Comment f'" Ex. 2 at 18-19 FN. 6. The rules are silent with respect to the extent of non-lawyer employee duties. Thus it is helpful to have expert testimony from ethics experts to establish industry practices and standards with respect to attorney conduct.

### C.    Mr. Downey's Expert Testimony Is Highly Probative.

The UST's final argument is that Mr. Downey's testimony is inadmissible under FRE 403.  FRE 403 is primarily intended to exclude prejudicial evidence from a jury's purview. *Tome v. United States,* 513 U.S. 150, 174 (1995) ("The codification, as a general matter, relies upon the trial judge's administration of Rules 401, 402, and 403 to keep ... the prejudicial [evidence] from the *jury*.") (emphasis added). *Biery v. United States*, No. 07-675L, 2012 WL 4497656, at *4 (Fed. Cl. Sept. 27, 2012).  Where, as here, the trial involves a *bench* trial, the concern relating to allowing testimony that would prejudice a jury is not present. *Seaboard Lumber Co. v. United States*, 308 F. 3d 1283, 1302 (Fed. Cir. 2002).  This Court is equipped to afford appropriate weight to expert testimony, and it will be easier and more efficient for the Court to do that with the benefit of live testimony.

For expert testimony to meet the requirements for admissibility under FRE 403, the evidence must probative value that is greater than "minimal."  As one Court has explained,

> In order for the "waste of time" factor to "substantially outweigh" relevant evidence, the probative value of the evidence balanced against it would have to be minimal. Here, the probative value of the experts' testimony is not minimal; it is substantial because it goes to the heart of the issues and is supported by different underlying credentials and backgrounds. The consideration of wasting time is insufficient to justify exclusion under Rule 403 in this case. Moreover, any waste of time that may occur does not "substantially outweigh" the probative value of the experts' testimony.

*Kay v. Lamar Advert. of S. Dakota, Inc.*, No. CIV. 07-5091-KES, 2009 WL 2525204, at *2 (D. S.D. Aug. 17, 2009).  Mr. Downey's opinions easily surmount this low threshold.

Indeed, the utility and reliability of Mr. Downey's opinions already has been demonstrated, in part, by events subsequent to the issuance of his report in December 2017.  In an excerpt of his report relating to MRPC 4-1.15, Mr. Downey stated:

> As Formal Opinion 128 admits, it was announcing a rule on the handling of flat fees contrary to prior common understanding.  My own experience as a Missouri legal ethics lawyer and frequent presenter at Missouri legal ethics continuing legal education programs proves that, although seven years have passed since the adoption of Formal Opinion 128, many Missouri lawyers do not know about (or at a minimum do not agree or comply with) Formal Opinion 128's guidance on the handling of flat fees.  Knowing that lawyers often mishandle fixed fees, I regularly make a point of raising this issue frequently when speaking on legal ethics issues.  My discussion of Formal Opinion 128 and its dictates on the handling of fixed fees are often met with disbelief and resistance.
>
> *Perhaps it should not be surprising then that, at the November 2017 Missouri Bar Committee meetings in Jefferson City, the president-elect of the Missouri Bar Roy Williams and others were pushing for an amendment of Rule 4-1.15 that would allow lawyers to treat at least certain small fixed fees as earned upon receipt.  I am uncertain regarding the current status of this proposal, but know it received widespread and hearty approval at a meeting of the Solo & Small Firm Committee during the November 2017 meetings.*

Ex. 2 at 23-24 (emphasis added).  Among other topics, Mr. Downey's report highlighted the possibility that Rule 4-1.15 might be modified to treat small fixed fees as earned upon receipt.  Mr. Downey's report has proven to be prescient, as the Missouri Supreme Court has indeed modified Rule 4-1.15.  On July 23, 2018, effective January 1, 2019, the Supreme Court of Missouri entered an order that provides that "an advanced flat fee which does not exceed $2,000 is exempted from [the requirement of depositing advance fees in a client trust account] and may be deposited in another account. Ex. 6 - Melinda J. Bentley, *Flat Fees and Trust Accounts – Updated Missouri Rules of Professional Conduct 4-1.15 Effective January 1, 2019: What You Need to Know, Journal of the* Missouri, Vol. 73, No. 5., September-October 2018, pp. 263-264 *(quoting revised Rule 4-1.15(g))*.  Had this version of the Rule been in effect when Ms. Scott's case was handled, there would have been no violation of Rule 4-1.15.  Mr. Downey's identification of this issue has clearly proven to be probative.

Mr. Downey's opinions relating to Count VI are highly probative as well.  The unstated premise of the UST's allegations against UpRight Law in Count VI appears to be that every

16

single communication with a client or every single representation must be handled perfectly. That is not the case. For example, the question under Rule 4-5.3(a) is whether the law has made "reasonable efforts to ensure that the firm has in effect measures" that will provide "reasonable assurance" that the non-lawyers working with the law firm will act "compatible with the professional obligations of the lawyer." It is difficult to make a determination of what is reasonable in a vacuum. Mr. Downey's testimony, based on his significant experience in law firm management and operations, is clearly probative on this issue.

## Conclusion

For the reasons expressed above, the UST's Motion should be denied.

Respectfully submitted,

*/s/* Mark T. Lavery
Craig Sonnenschein, IL Bar #6273084
Mark T. Lavery, IL Bar #6271291
79 West Monroe Street
Chicago, Illinois 60603
(312) 273-1160
csonnenschein@uprightlaw.com
mlavery@uprightlaw.com
Admitted *Pro Hac Vice*

Eric C. Rajala, MO Bar # 42417
11936 W. 119th St., PMB 304
Overland Park, Kansas 66213
(913) 339-9806
eric@ericrajala.com
*Attorneys for UpRight Law, LLC, and David L. Cooper*